**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**TACOMA DIVISION**

| | |
|---|---|
| DEBORAH CERKEZOGLU, on her own behalf and on behalf of others similarly situated, | Case No. 3:25-cv-06108-DGE |
| Plaintiff, | Honorable Judge David G. Estudillo |
| v. | PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COMPLAINT |
| FREDERICI BRANDS LLC, | |
| Defendant. | |

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE
i

## TABLE OF CONTENTS

STANDARD OF DECISION ................................................................................................ 2

ARGUMENT ...................................................................................................................... 2

    I.  Plaintiff plausibly alleges Frederici violated CEMA. ............................................. 2

    II. Plaintiff's CEMA claims are not preempted by the CAN-SPAM Act. .................... 5

        A.   The CAN-SPAM Act expressly exempts statutes like CEMA from preemption. ........... 5

        B.   Frederici's deceptions are more than bare immaterial errors. ......................... 6

    III.  Plaintiff's CEMA claims are not preempted by the negative implications of the Commerce Clause............................................................................................................... 12

        A.   CEMA does not violate any prohibition on extraterritorial regulation emanating from the negative implications of the Commerce Clause............................................... 13

        B.   CEMA does not unduly burden interstate commerce. ................................... 20

    IV. Plaintiff's CPA claims survive. ........................................................................... 23

    V.  Plaintiff's demands for relief survive. .................................................................. 23

CONCLUSION................................................................................................................. 24

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Libraries Ass'n v. Pataki*,
969 F. Supp. 160 (S.D.N.Y. 1997) ...................................................................................19

*Asis Internet Services v. ConsumerBargainGiveaways, LLC*,
622 F. Supp. 2d 935 (N.D. Cal. Apr. 17, 2009)...................................................................7

*Asis Internet Servs. v. Member Source Media, LLC*,
2010 WL 1610066 (N.D. Cal. Apr. 20, 2010) ....................................................................7

*Asis Internet Servs. v. Subscriberbase Inc.*,
2009 WL 4723338 (N.D. Cal. Dec. 4, 2009).......................................................................7

*Asis Internet Servs. v. Vistaprint USA, Inc.*,
617 F. Supp. 2d 989 (N.D. Cal. 2009) .................................................................................7

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
729 F.3d 937 (9th Cir. 2013) .............................................................................................21

*Balsam v. Trancos, Inc.*,
138 Cal. Rptr. 3d 108 (Cal. Ct. App. 2012).........................................................................7

*Bontkowski v. Smith*,
305 F.3d 757 (7th Cir. 2002) .............................................................................................23

*Booth v. Appstack, Inc.*,
2015 WL 1466247 (Mar. 30, 2015).....................................................................................18

*Brown v. Old Navy, LLC*,
567 P.3d 38 (Wash. 2025).............................................................................................1, 10

*Brummet v. Washington's Lottery*,
288 P.3d 48 (Wash. Ct. App. 2012).....................................................................................10

*Correa v. Fryhoff*,
2025 WL 819037 (C.D. Cal. Feb. 20, 2025)........................................................................23

*Daniel Sharpsmart, Inc. v. Smith*,
889 F.3d 608 (9th Cir. 2018) .............................................................................................18

*Daniel v. Lennar Corp.*,
2019 WL 8194735 (C.D. Cal. Oct. 16, 2019)......................................................................24

*Eclectic Props. E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) ...................................................................................................3

*Edgar v. MITE Corp.*,
   457 U.S. 624 (1982).......................................................................................................16, 17

*Fecht v. Price Co.*,
   70 F.3d 1078 (9th Cir. 1995) ..................................................................................................11

*Ferguson v. Friendfinders, Inc.*,
   115 Cal. Rptr. 2d 258 (Ct. App. 2002) ...................................................................................17

*Ferguson v. Quinstreet, Inc.*,
   2008 WL 3166307 (W.D. Wash. Aug. 5, 2008) ........................................................................7

*Flynt v. Bonta*,
   131 F.4th 918 (9th Cir. 2025) ..................................................................................... *passim*

*Gordon v. Virtumundo, Inc.*,
   575 F.3d 1040 (9th Cir. 2009) .................................................................................... *passim*

*Grizzly Gen. Contractors Corp. v. Kitsap Pub. Health Dist.*,
   2025 WL 81384 (W.D. Wash. Jan. 13, 2025)..........................................................................24

*Harrington v. Vineyard Vines, LLC*,
   2025 WL 3677479 (W.D. Wash. Dec. 18, 2025) ...............................................................3, 5, 7

*Hartman v. United Bank Card, Inc.*,
   291 F.R.D. 591 (W.D. Wash. 2013) ........................................................................................18

*Healy v. Beer Institute*,
   491 U.S. 324 (1989)...................................................................................................... *passim*

*Hoang v. Reunion.com, Inc.*,
   2010 WL 1340535 (N.D. Cal. Mar. 31, 2010)...........................................................................7

*Hypertouch, Inc. v. ValueClick, Inc.*,
   123 Cal. Rptr. 3d 8 (Cal. Ct. App. 2011) .................................................................................7

*Kempf, et al., v. FullBeauty Brands Ops.*,
   2026 WL 395677 (W.D. Wash. Feb. 12, 2026)....................................................................5, 24

*Kousisis v. United States*,
   145 S. Ct. 1382 (2025).................................................................................................8, 9, 10

*Littlejohn v. Kaiser Fdn. Health Plan of Wash.*,
   2024 WL 4451955 (W.D. Wash. Oct. 9, 2024) .................................................................2, 3, 11

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE

iv

*Ma v. Nike, Inc.*,
   2026 WL 100731 (W.D. Wash. Jan. 14, 2026).................................................................5, 7

*MaryCLE, LLC v. First Choice Internet, Inc.*,
   890 A.2d 818 (Md. Ct. Spec. App. 2006) .......................................................................17, 18

*National Pork Producers Council v. Ross*,
   598 U.S. 356 (2023)............................................................................................... *passim*

*NCAA v. Miller*,
   10 F.3d 633 (9th Cir. 1993) .............................................................................................22

*Omega World Travel, Inc. v. Trans World Airlines*,
   469 F.3d 348 (4th Cir. 2006) ..............................................................................................7

*Paris v. Steinberg & Steinberg*,
   828 F. Supp. 2d 1212 (W.D. Wash. 2011)........................................................................24

*Pike v. Bruce Church, Inc.*,
   397 U.S. 137 (1970)................................................................................................ *passim*

*PSINet, Inc. v. Chapman*,
   362 F.3d 227 (4th Cir. 2004) ...........................................................................................19

*Publius v. Boyer-Vine*,
   237 F. Supp. 3d 997 (E.D. Cal. 2017)..............................................................................19

*Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn*,
   375 U.S. 96 (1963)............................................................................................................22

*Sam Francis Foundation v. Christies, Inc.*,
   784 F.3d 1320 (9th Cir. 2015) (*en banc*) ...............................................................15, 16, 17, 19

*Sams v. Yahoo! Inc.*,
   713 F.3d 1175 (9th Cir. 2013) ...........................................................................2, 7, 11, 20

*Silverstein v. Keynetics Inc.*,
   727 F. App'x 244 (9th Cir. Mar. 6, 2018).........................................................................6

*Smith v. Anastasia Inc.*,
   2014 WL 12577598 (S.D. Cal. Sept. 15, 2014).................................................................7

*South Dakota v. Wayfair*,
   585 U.S. 162 (2018)..........................................................................................................12

*State v. Heckel*,
   24 P.3d 404 (Wash. 2001)....................................................................................... *passim*

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE

v

*Stephens v. Omni Ins. Co.*,
    159 P.3d 10 (Wash. Ct. App. 2007)................................................................................10

*U.S. Commodity Futures Trading Comm'n v. Monex Cred. Co.*,
    931 F.3d 966 (9th Cir. 2018) ......................................................................................19

*United States v. UCB, Inc.*,
    970 F.3d 835 (7th Cir. 2020) ......................................................................................18

*Valley Bank of Nev. v. Plus Sys., Inc.*,
    914 F.2d 1186 (9th Cir. 1990) ....................................................................................21

*Wagner v. Spire Vision*,
    2014 WL 889483 (N.D. Cal. Mar. 3, 2014)..................................................................7

*Young v. Toyota Motor Sales, U.S.A.*,
    442 P.3d 5 (Wash. Ct. App. 2019).............................................................................3, 6

**Statutes**

15 U.S.C. §§ 7701–7713......................................................................... *passim*

29 U.S.C. § 164(b) ...............................................................................................22

Wash. Rev. Code. (RCW) § 19.190.020......................................................... *passim*

Wash. Rev. Code. (RCW) § 19.190.030.................................................................1, 23, 24

**Rules**

Fed. R. Civ. P. 12....................................................................................2, 3, 19, 23

**Constitutional Provisions**

U.S. Const. art. I, § 8, cl. 3................................................................................12

**Other Authorities**

*Huiliang Zhao et al., Impact of Pricing and Product Information on Consumer
    Buying Behavior with Customer Satisfaction in a Mediating Role*, 12 Frontiers
    in Psychology 720151 (2021) ....................................................................................9

Restatement (Second) of Torts § 538 (Am. L. Inst. 1977) ...........................................8

S. Rep. No. 108-102........................................................................................12, 16, 21

U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital
    Design Can Harm Competition and Consumers* 27 (2022)......................................8

Washington's Commercial Electronic Mail Act (CEMA) and Consumer Protection Act (CPA) prohibit commercial emails containing "false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b); *see id.* § 19.190.030(1)(b) (CEMA violations are CPA violations). When faced with this clear prohibition, including a recent decision from the Washington Supreme Court, *see Brown v. Old Navy, LLC*, 567 P.3d 38 (Wash. 2025), Defendant Frederici Brands LLC, doing business as Color Wow, ("Frederici") simply decided to ignore it.

Frederici relentlessly spams consumers' inboxes with email subject lines larded with caps and emoji that herald the beginning, middle, and merciful end of promotions—*falsely*. "25% OFF today only!" says Frederici—when the sale would last another three days. Compl. ¶¶ 41–42. "TODAY ONLY: 25% OFF ALMOST EVERYTHING" says Frederici—only to winkingly suggest that was just an April Fools joke, and the sale would continue. *Id.* ¶¶ 49–52. "24-HOURS ONLY" says Frederici again—when it knew the promotion would be available for at least 48 hours. *See id.* ¶¶ 55–58. And so on. *See generally id.* Ex. A.

Frederici seeks to divert attention away from its deceptive subject headings, and the false urgency that they evoke, by asserting they aren't so misleading after all. To the contrary. These marketing tactics are referred to as false limited time messages, false time scarcity claims, or false urgency claims, *see id.* ¶¶ 30–39, and are one "common way online marketers manipulate consumer choice by inducing false beliefs." *Id.* ¶ 30 (internal quotation marks omitted). That is, marketers use them because they *work*. *See id.* ¶¶ 32–38. They cause consumers to pay less attention to and think less carefully about their purchasing decisions than they otherwise would, leaving them worse off. *See id.* As deployed by Frederici here, these tactics are straightforward violations of CEMA, and thus the CPA. *See* Wash. Rev. Code § 19.190.030.

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE

1

At its core, Frederici's motion to dismiss presents two straightforward questions of statutory and constitutional interpretation: First, does a federal statute preempting state-law claims "except to the extent" that the state law relied on "prohibits falsity or deception" preempt a state law prohibiting "false or misleading" subject lines without proof of scienter, damages, or other elements of common law torts? The obvious answer is no, as the leading decision in *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009), confirms. Second, does the constitutional assignment to Congress of the power to regulate interstate commerce prohibit Washington from protecting its residents against deceptive commercial spam? Again, the answer is no, as the Supreme Court's recent decision in *National Pork Producers Council v. Ross*, 598 U.S. 356 (2023), confirms. Frederici's remaining arguments fare no better. The Court should deny this motion.

## STANDARD OF DECISION

On a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint's well pleaded factual allegations are taken as true and all reasonable inferences are drawn in plaintiff's favor. *Littlejohn v. Kaiser Fdn. Health Plan of Wash.*, 2024 WL 4451955, at *3 (W.D. Wash. Oct. 9, 2024). The motion must be denied if the complaint states a claim to relief that is "plausible on its face." *Id.* Where, as here, defendant seeks Rule 12(b)(6) dismissal based on an affirmative defense, it must show that the "allegations in the complaint suffice to establish the defense" and that the defense is "apparent from the face" of the complaint. *Sams v. Yahoo! Inc.*, 713 F.3d 1175, 1179 (9th Cir. 2013) (internal quotation marks omitted).

## ARGUMENT

### I.      Plaintiff plausibly alleges Frederici violated CEMA.

CEMA prohibits "false or misleading" subject lines in commercial emails. Wash. Rev. Code § 19.190.020(1)(b). Frederici argues first that three of the email subject lines challenged in

the Complaint are true. *See* Mot. 4–6. A statement may be literally true but nevertheless actionably misleading if it is "likely to mislead a reasonable consumer" *Young v. Toyota Motor Sales, U.S.A.*, 442 P.3d 5, 9 (Wash. Ct. App. 2019) (internal quotation marks omitted). Whether a representation is false or misleading is a question of fact unsuited for decision on a motion to dismiss. *See Harrington v. Vineyard Vines, LLC*, 2025 WL 3677479, at *1 & n.3 (W.D. Wash. Dec. 18, 2025) (denying motion to dismiss CEMA claims). Even taken on their own terms, however, Frederici's no-falsity arguments do not entitle it to dismissal. Frederici is trying to argue on the back end that its bait and switch email marketing tactics are not actually deceptive. Telling someone that a promotion is ending imminently, when it is not, is deceptive—plain and simple.

Frederici's only contrary argument is that Plaintiff is simply wrong when she alleges that Frederici always intended to "extend" the promotions it misleadingly advertised as "ending" within hours. *See* Compl. ¶¶ 42, 45, 50, 56. To the contrary, says Frederici, in each instance, at some time between sending out the "ending" email and the "extending" email, it genuinely reached the business decision to extend and further market the promotion. Maybe. That is what discovery and trial on the merits exist to ferret out. But, on the pleadings, Frederici's self-favoring inference runs headlong into the standards applied to Rule 12(b)(6) motions, under which fact allegations are presumed true and all reasonable inferences are drawn in the pleader's favor. *Littlejohn*, 2024 WL 4451955, at *3. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6). Plaintiff's complaint may be dismissed only when defendant's plausible alternative explanation is so convincing that plaintiff's explanation is *implausible*." *Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 996 (9th Cir. 2014). Frederici's arguments do nothing to undermine the facial plausibility of the conclusion that sophisticated

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE

3

online retailers do not conceive, implement, and market significant promotions in less than a day's time. That would be surprising if it were true—surely much more surprising than such a retailer's deployment of well documented, well studied marketing tricks. Indeed, Frederici's winking email of April 2, 2024, stating, "SURPRISE! April Fools Sale, extended 😄", Compl. ¶ 52, all but expressly acknowledges the falsity of its previous "sale ending" email. If Frederici has evidence that its advertising executives scrambled in the late evening and early morning hours between emails to decide on a plan for extending and further marketing its promotions, it may produce it in discovery.

Second, Frederici argues that Plaintiff does not plausibly allege Frederici knew or had reason to know that she is a Washington resident. *See* Mot. 6–7. Frederici studiously avoids citing paragraph 64 of the Complaint, in which Plaintiff alleges the nuts and bolts of the marketing platform Frederici appears to use. That platform, Klayvio, "tells Frederici where the recipients of its marketing emails are located using IP geolocation and other data extracted from recipients' interactions with Frederici, which Klaviyo tracks in detail," from which residence may be inferred. Compl. ¶ 64. Not to mention the other tools available to Frederici for learning about its target audiences. *See id.* ¶¶ 62–63, 65–68. In short, Plaintiff plausibly alleges what is at this point obvious to anyone with a passing familiarity with digital marketing: marketers take great pains to know as much as possible about its audiences, and a massive industry has grown up to meet that demand. It is wholly implausible to assume that sophisticated online retailers have *no* information which directly or by inference establishes the residence of its audience. Again, if, contrary to all expectations, Frederici's marketing capabilities are really so limited, it may produce that evidence in discovery.

Third and finally, Frederici points out that Plaintiff does not expressly allege she received

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE

4

certain of the emails discussed in the Complaint and identified in Exhibit A. Drawing every reasonable inference in Plaintiff's favor, however, leads to the conclusion that Frederici sent more marketing emails to Plaintiff than she happened to save in her inbox, and that Plaintiff indeed received every marketing email sent by Frederici after her email address was entered into its system. The Complaint is clear that Frederici is engaged in programmatic marketing campaigns targeting Washington consumers as part of its marketing schemes and strategies, and that the emails pleaded are simply examples of those strategies in action. *See, e.g.*, Compl. ¶¶ 40–41, 47–49, 54, 59, 60. *One* false or misleading subject line is all Plaintiff needs to get her foot over the threshold. The full scope of Frederici's deceptions will be revealed in discovery.

## II.   Plaintiff's CEMA claims are not preempted by the CAN-SPAM Act.

Frederici argues that Plaintiff's CEMA claims are preempted by the federal CAN-SPAM Act, 15 U.S.C. §§ 7701–7713. Neither the Act's plain text, its legislative history, the Ninth Circuit's decision in *Gordon v. Virtumundo, Inc.*, 575 F.3d 1040 (9th Cir. 2009), nor cases decided before or after *Gordon* support preemption here. Preemption of CEMA by the CAN-SPAM Act has now been rejected *three times* in recent weeks in this District. *See Kempf, et al., v. FullBeauty Brands Ops.*, 2026 WL 395677 (W.D. Wash. Feb. 12, 2026); *Ma v. Nike, Inc.*, 2026 WL 100731 (W.D. Wash. Jan. 14, 2026); *Harrington v. Vineyard Vines, LLC*, 2025 WL 3677479 (W.D. Wash. Dec. 18, 2025).

### A.   The CAN-SPAM Act expressly exempts statutes like CEMA from preemption.

The Act's preemption provision provides in relevant part as follows:

> This chapter supersedes any statute, regulation, or rule of a State or political subdivision of a State that expressly regulates the use of electronic mail to send commercial messages, *except to the extent that any such statute, regulation, or rule prohibits falsity or deception in any portion of a commercial electronic mail message or information attached thereto*.

15 U.S.C. § 7707(b)(1) (emphasis added).

The application of the Act's plain text to Plaintiff's claims is straightforward. CEMA prohibits sending commercial email that "[c]ontains false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b). By prohibiting "false or misleading" subject lines in commercial emails, *id.*, CEMA "prohibits falsity or deception" in some part of or information attached to commercial emails. 15 U.S.C. § 7707(b)(1). By its plain terms, therefore, the Act does not preempt Plaintiff's CEMA claims.

Against this inescapable conclusion, Frederici argues that there is a material difference between the CAN-SPAM Act's term "deception" and CEMA's term "misleading." Mot. 8–10. That strains the English language past its breaking point. The Ninth Circuit, applying CAN-SPAM, has used the terms interchangeably, as any ordinary English speaker might. *See Silverstein v. Keynetics Inc.*, 727 F. App'x 244, 246 (9th Cir. Mar. 6, 2018) ("The e-mails' use of the LinkedIn.com domain name is not materially *false or misleading within the meaning of the CAN-SPAM Act*." (emphasis added)). So too has Congress. In prohibiting "*deceptive* subject headings," Congress prohibited subject lines that "would be likely to *mislead* a recipient." 15 U.S.C. § 7704(a)(2) (emphasis added). Under Washington law, "[d]*eception* exists … if there is a representation, omission or practice that is likely to *mislead* a reasonable consumer." *Young*, 442 P.3d at 33 (emphasis added; internal quotation marks omitted). Such formulas are too common and well worn to require further elaboration. If you have been misled by someone, you have been deceived by someone. No reasonable English speaker would disagree.

**B.    Frederici's deceptions are more than bare immaterial errors.**

Frederici argues further that Plaintiff cannot show scienter, materiality, or damages. *See* Mot. 10–13. But to survive CAN-SPAM preemption, Plaintiff need only show some degree of

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE

6

materiality. *See Gordon*, 575 F.3d at 1061. Court after court has rejected the argument that plaintiffs must show more to avoid preemption. *See Nike*, 2026 WL 100731, at *3; *Harrington*, 2025 WL 3677479, at *1; *Smith v. Anastasia Inc.*, 2014 WL 12577598, at *2–3 (S.D. Cal. Sept. 15, 2014); *Wagner v. Spire Vision*, 2014 WL 889483, at *3–4 (N.D. Cal. Mar. 3, 2014); *Asis Internet Servs. v. Member Source Media, LLC*, 2010 WL 1610066, at *3 (N.D. Cal. Apr. 20, 2010); *Balsam v. Trancos, Inc.*, 138 Cal. Rptr. 3d 108, 122 (Cal. Ct. App. 2012); *Hypertouch, Inc. v. ValueClick, Inc.*, 123 Cal. Rptr. 3d 8, 27 (Cal. Ct. App. 2011); *Hoang v. Reunion.com, Inc.*, 2010 WL 1340535, at *4 (N.D. Cal. Mar. 31, 2010) (vacating prior pre-*Gordon* decision to the contrary); *Asis Internet Servs. v. Subscriberbase Inc.*, 2009 WL 4723338, at *3 (N.D. Cal. Dec. 4, 2009); *Asis Internet Servs. v. Vistaprint USA, Inc.*, 617 F. Supp. 2d 989, 993 (N.D. Cal. 2009); *Asis Internet Services v. ConsumerBargainGiveaways, LLC,* 622 F. Supp. 2d 935, 942, 944 (N.D. Cal. Apr. 17, 2009); *Ferguson v. Quinstreet, Inc.*, 2008 WL 3166307, at *9 (W.D. Wash. Aug. 5, 2008).

The only question, therefore, is whether it is "apparent from the face" of Plaintiff's Complaint, *Sams*, 713 F.3d at 1179, that the misrepresentations she complains of are merely "bare immaterial error[s]." *Gordon*, 575 F.3d at 1061 (quoting *Omega World Travel, Inc. v. Trans World Airlines*, 469 F.3d 348, 359 (4th Cir. 2006)). It is not. Plaintiff is not complaining of "fanciful" domain names or "from" fields that fail an invented "labeling requirement." *Id.* at 1063–64. To the contrary, Plaintiff complains of Frederici's barrage of emails laden with false or misleading subject lines, *i.e.*, its false time-scarcity tactics. Those tactics are plainly material to the behavior of ordinary consumers. If they were not, Frederici wouldn't deploy them in the first place. In short, those tactics work and garner more sales.

As alleged, "[f]alse time scarcity claims … harm consumers by manipulatively distorting their decision-making to their detriment." Compl. ¶ 37 (emphasis omitted). As one report cited in

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE

7

the Complaint concludes, "[f]alse or misleading scarcity claims can change the behaviour of consumers." U.K. Competition & Mkts. Auth., *Online Choice Architecture—How Digital Design Can Harm Competition and Consumers* 27 (2022), https://perma.cc/V848-7TVV/ (cited at Compl. ¶¶ 30, 32, 34–36, 38–39). Specifically, "[f]alse scarcity claims are psychologically effective" because, "[a]s 'considerable evidence' suggests, 'consumers react to scarcity and divert their attention to information where they might miss opportunities.'" Compl. ¶ 34 (quoting *Online Choice Architecture*, *supra*, at 26). One study found that "customers who took timed deals rather than waiting to see wider options ended up worse off than those who waited." *Id.* ¶ 38 (quoting *Online Choice Architecture*, *supra*, at 27). Moreover, consumers learn to alter their behavior in the face of false scarcity claims, "meaning that when a product [or offer] is truly scarce, the seller will not be able to credibly communicate this information." *Id.* ¶ 39 (quoting *Online Choice Architecture*, *supra*, at 27). And at this stage, the Court must accept facts pleaded in the Complaint as true.

All of this accords with the federal law of materiality, not to mention common sense. "Whether in tort or contract law," materiality focuses on "the effect on the likely or actual behavior of the recipient of the alleged misrepresentation." *Kousisis v. United States*, 145 S. Ct. 1382, 1396 (2025) (applying wire fraud statute). A fact is material "if a reasonable person would attach importance to it in deciding how to proceed, or if the defendant knew (or should have known) that the recipient would likely deem it important." *Id.* (citing *inter alia* Restatement (Second) of Torts § 538 (Am. Law Inst. 1977)). Representations about the timing and availability of sales, discounts, and other special offers are, at bottom, representations about prices. If a 50 percent discount on a $20 product "ends tonight," that product costs $10 today and $20 tomorrow. And price is obviously a material fact—perhaps *the* material fact—affecting the behavior of ordinary consumers. *See, e.g.*,

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE

8

Huiliang Zhao *et al.*, *Impact of Pricing and Product Information on Consumer Buying Behavior with Customer Satisfaction in a Mediating Role*, 12 Frontiers in Psychology 720151 (2021), *available at* https://pmc.ncbi.nlm.nih.gov/articles/PMC8710754/pdf/fpsyg-12-720151.pdf/. If a consumer is in the market for a product she believes will cost $20 tomorrow, she will naturally "attach importance," *Kousisis*, 145 S. Ct. at 1396, to the fact that it will cost only $10 if she buys it today.

As for common sense, Frederici's argument flies in its face. Frederici is a "sophisticated commercial enterprise" that has "engaged in persistent marketing through mass email campaigns across the United States." Compl. ¶ 60. Its email marketing platform enables it to, among other things, track how many recipients engage with its marketing materials and to what extent. *See id.* ¶ 64. And email subject lines offer limited space within which Frederici can communicate "above the fold" messages that come to consumer attention even if the emails are immediately deleted or their contents ignored. Why, then, would Frederici choke its consumers' inboxes like coffee grounds in a sink with email after email announcing that an offer is for "today only!" or "24-HOURS ONLY" or that it "Ends Today!" or "Ends Tonight!" or is in its "Final hours!", Compl. Ex. A—why would Frederici expend all this time and effort broadcasting mere immaterialities? A plausible answer (indeed, the only plausible answer) is, of course it would not. Frederici would not waste valuable marketing dollars or consumer attention on marketing messages unless they *worked*. And Frederici's false-urgency tactics work because they exploit well documented features of consumer psychology and behavior. *See id.* ¶¶ 30–39. In other words, Frederici's tactics work because they misrepresent facts to which consumers "attach importance." *Kousisis*, 145 S. Ct. at 1396. Nothing in the text of the CAN-SPAM Act or *Gordon* requires more to avoid preemption.

Frederici launches scattershot objections to this conclusion, but none finds its mark.

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE

9

Frederici argues Plaintiff cannot show materiality because she does not allege she read or relied on its misleading subject lines. *See* Mot. 12–13. Frederici's argument confounds materiality and reliance. In assessing the former, the question is not whether any particular Plaintiff changed their behavior in response to any particular email, but whether Frederici's misrepresentations would have an "effect on the *likely … behavior*" of its recipients. *Kousisis*, 145 S. Ct. at 1396 (emphasis added); *see also id.* ("[A] misrepresentation is material if a reasonable person *would attach* importance to it in deciding how to proceed, or if the defendant knew (or should have known) that the recipient *would likely* deem it important." (emphasis added)). And, as shown above, reasonable consumers attach importance to the price of consumer goods.

For the sweeping proposition that statements creating false urgency are not material, but merely a "kind of technical" failure to supply additional information, Mot. 12, Frederici cites one decision from the Washington Court of Appeals holding, without analysis, that representations about raffle tickets "going fast" did not misrepresent "something of material importance." *Brummet v. Washington's Lottery*, 288 P.3d 48, 55 (Wash. Ct. App. 2012). But *Brummet* is readily distinguishable. To represent nonspecifically that certain widgets are "going fast" does not in itself say anything about how many widgets remain, or for how long consumers can expect those widgets to remain available for sale. If, by contrast, the *Brummet* defendant had used Frederici's tactics and represented that the raffle was in its "FINAL HOURS," Compl. ¶ 46, when it was not, that would be representing urgency "when in fact there is no urgency," making it actionably deceptive. *Stephens v. Omni Ins. Co.*, 159 P.3d 10, 19 (Wash. Ct. App. 2007) ("The increasingly urgent tone ('ATTENTION!') and message ('ACTIVITY PENDING TEN (10) days') [of defendant's dunning letters] suggests that the recipient's situation is becoming worse with each passing day when in fact there is no urgency."); *see also Brown*, 567 P.3d at 47 ("Washington residents would

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE                          10

depend on" certain factual representations "in making their consumer decisions," including representations about "the duration or availability of a promotion.").

In any event, materiality is a mixed question of law and fact "typically … resolved by juries." *Fecht v. Price Co.*, 70 F.3d 1078, 1081 (9th Cir. 1995). Any doubts as to the materiality of Frederici's misrepresentations are therefore to be doubly resolved against Frederici: once because it is not Plaintiff's burden to plead materiality, but Frederici's burden to show Plaintiff has pleaded himself out of court with immaterialities, *see Sams*, 713 F.3d at 1179; and twice because Plaintiff should be afforded the benefit of fact and expert discovery to demonstrate the plausible inference that Frederici sends its misleading email subject lines precisely to impact consumer behavior. Indeed, at this stage, the Court must draw reasonable inferences in Plaintiff's favor. *See Littlejohn*, 2024 WL 4451955, at *3. Frederici is not entitled to dismissal on the basis of CAN-SPAM Act preemption.

Finally, *Gordon* and the cases applying it simultaneously explain the import of "traditionally tortious or wrongful conduct," *Gordon*, at 575 F.3d at 1062, in the preemption analysis, and give the lie to Frederici's characterization of Plaintiff's CEMA claims as attempts to impose "strict liability." Mot. 10. To merit preemption, a defendant under *Gordon* has to show it didn't do anything *wrong*, in light of the state-law standard to be applied to its conduct, viewed against the backdrop of what has traditionally been considered wrongful. Frederici has not and cannot make that showing here. Frederici does precisely what CEMA prohibits: it spams Washington residents with commercial emails containing "false or misleading information in the subject line." Wash. Rev. Code § 19.190.020(1)(b). As shown below, Frederici does this by misrepresenting what is perhaps the single most important fact to consumers—*price*—in a way exploits well documented features of consumer psychology and distorts markets' proper

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE

functioning. Frederici does not even attempt to argue that such conduct has been traditionally understood as beyond the reach of prohibitions on falsity and deception in commerce. Frederici may regret the significant statutory damages imposed by CEMA for its conduct, but that does not make CEMA a strict liability statute, or its own deceptions mere immaterial errors.

**III.    Plaintiff's CEMA claims are not preempted by the negative implications of the Commerce Clause.**

Constitutional challenges usually rest on what the Constitution says. Frederici, by contrast, seeks invalidation of a duly enacted state statute on the basis of what the Constitution does *not* say. "[E]xtreme caution is warranted before a court deploys this implied authority." *Nat'l Pork Producers Council v. Ross*, 598 U.S. 356, 390 (2023), *aff'g* 6 F.4th 1021 (9th Cir. 2021). The Constitution expressly confers on Congress the power to regulate interstate commerce. *See* U.S. Const. art. I, § 8, cl. 3. By negative implication, the Supreme Court has held, states lack the power to "discriminate against interstate commerce" or "impose undue burdens on interstate commerce." *South Dakota v. Wayfair*, 585 U.S. 162, 173 (2018). "Although it is not a clause in the Constitution," this doctrine is called the "dormant" Commerce Clause. *Flynt v. Bonta*, 131 F.4th 918, 923 (9th Cir. 2025).

"[T]he Framers equipped Congress with considerable power to regulate interstate commerce and preempt contrary state laws." *Pork Producers*, 598 U.S. at 390. In the CAN-SPAM Act, Congress exercised just that power. *See* part II, *supra*. Congress considered the appropriate balance of state and federal power over commercial email, specifically in light of "the inherently interstate nature of e-mail communications," S. Rep. No. 108-102, at 21, and enacted the CAN-SPAM Act's preemption provision to address it. Congress struck the balance by expressly declining to preempt state rules, like CEMA, that prohibit "falsity or deception," 15 U.S.C. § 7707(b), while saying nothing about any purportedly "extraterritorial impacts" such rules might have. *Cf. Pork*

*Producers*, 598 U.S. at 390 ("[V]irtually all state laws create ripple effects beyond their borders."). Dissatisfied with the choices Congress actually made, *cf. id.* (noting challengers' failure to secure preemptive federal legislation), Frederici now invites the Court to invalidate CEMA on the basis of Congress's power to choose differently. That counterintuitive and atextual result has no constitutional warrant.

The "very core" of dormant Commerce Clause jurisprudence is the antidiscrimination principle. *Id.* at 369; *see Flynt*, 131 F.4th at 923. This principle "prohibits the enforcement of state laws driven by economic protectionism—that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *Pork Producers*, 598 U.S. at 369 (internal quotation marks, ellipsis omitted). It has no application here. By its plain terms, CEMA does not facially discriminate against interstate commerce. *See Washington v. Heckel*, 24 P.3d 404, 409 (Wash. 2001) (rejecting dormant Commerce Clause challenge to CEMA) ("The Act is not facially discriminatory."); Wash. Rev. Code § 19.190.020(1) (providing that "[n]o person" may send prohibited commercial email from a computer in Washington or to a Washington resident); *id.* § 19.190.010(11) (defining "person" without reference to residency). CEMA, as relevant here, even-handedly protects Washington residents from commercial spam, no matter who sends it. *See Heckel*, 24 P.3d at 409. Frederici does not argue otherwise. Thus far afield from the "core" of dormant Commerce Clause jurisprudence, *Pork Producers*, 598 U.S. at 369, Frederici "begin[s] in a tough spot." *Id.* at 370. It never escapes.

### A.    CEMA does not violate any prohibition on extraterritorial regulation emanating from the negative implications of the Commerce Clause.

Frederici argues first that CEMA is preempted by the Commerce Clause's negative implications to the extent it protects Washington residents from deceptive commercial spam even when those residents fortuitously happen to be located outside Washington's borders when

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE

13

Frederici presses "send" on its emails. *See* Mot. 14–19. This argument fails. The negative implications of the Commerce Clause do not establish any rule that states may protect their residents from out-of-state actors' depredations only if and only to the extent that those residents happen to be located within the state's borders when those depredations are targeted at them.

To begin with, *Pork Producers* "substantially clarified" the meaning of cases (like *Healy v. Beer Institute*, 491 U.S. 324 (1989), cited repeatedly by Frederici, Mot. 2, 20) invoking a supposed anti-extraterritoriality principle impliedly emanating from the Commerce Clause. *Flynt*, 131 F.4th at 924. The Court made clear that its extraterritoriality cases are fundamentally antidiscrimination cases: "each [case] typifies the familiar concern with preventing purposeful discrimination against out-of-state economic interests." *Flynt*, 131 F.4th at 924 (quoting *Pork Producers*, 598 U.S. at 371). Statutes successfully challenged as impermissible extraterritorial regulation each had the "*specific* impermissible extraterritorial effect" of "prevent[ing] out-of-state firms from undertaking competitive pricing or depriv[ing] businesses and consumers in other States of whatever competitive advantages" they had. *Id.* (quoting *Pork Producers*, 598 U.S. at 374) (internal quotation marks omitted). These cases thus enforced the core prohibition on "impermissible discriminatory purpose[s]," *not* "any broader, freestanding extraterritoriality principle." *Id.* (citing *Pork Producers*, 598 U.S. at 373).

*Healy* and the other extraterritoriality cases are nothing like this one. There is nothing like the "*specific*" discriminatory effects condemned by *Healy* and cases like it, *Flynt*, 131 F.4th at 924 (quoting *Pork Producers*, 598 U.S. at 374), and indeed no discriminatory or protectionist effect of any kind. There is no appreciable impact on interstate commerce at all. The negative implications of the Commerce Clause simply do not enforce "any broader, freestanding extraterritoriality principle" that Frederici's "residents temporarily out-of-state" hypothetical might be supposed to

violate. *Id.*; *see also id.* at 929 (same). That should be the end of the extraterritoriality inquiry.

Nothing in *Sam Francis Foundation v. Christies, Inc.*, 784 F.3d 1320 (9th Cir. 2015) (*en banc*), requires a different result. That case dealt with a California statute requiring payment of royalties to artists from sales of their art "whenever the seller resides in California or the sale takes place in California." *Sam Francis*, 784 F.3d at 1323 (internal quotation marks, emphasis omitted). The majority held in relevant part that the royalty requirement "violate[d] the dormant Commerce Clause" when "applied to out-of-state sales by California residents." *Id.* at 1323. Three judges declined to endorse that result—two because no California-resident plaintiffs were then before the court, *see id.* at 1334 (Berzon, Pregerson, JJ., concurring in part), and one for the additional reason that the majority got the result wrong. *See id.* at 1330 (Reinhardt, J., dissenting in part).

To begin with, the holding of *Sam Francis* as to out-of-state sales by California residents did not survive *Pork Producers*. *See Flynt*, 131 F.4th at 931 (noting question as open). As the partial *Sam Francis* dissent presciently observed, in *Healy* and the other extraterritoriality cases, "the laws at issue … had a direct effect on out-of-state commercial transactions by regulating the price or terms of such transactions, or by otherwise requiring an out-of-state merchant to seek regulatory approval in one State before undertaking a transaction in another." *Sam Francis*, 784 F.3d at 1331 (Reinhardt, J., dissenting in part) (internal citation, quotation marks omitted). In other words, "cases like *Healy* … turned on an impermissible discriminatory purpose against out-of-state economic interests, not any freestanding extraterritoriality principle." *Flynt*, 131 F.4th at 929. The *Sam Francis* majority, by contrast, purported to enforce just such a freestanding principle, without finding or even hinting at any interstate discrimination or protectionism. *See Sam Francis*, 784 F.3d at 1323, 1325 (quoting and "merely apply[ing]" broad extraterritoriality language drawn from *Healy*). The partial dissent correctly perceived the error of this move. *See id.* at 1332

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE

15

(Reinhardt, J., dissenting in part) ("The Court's cases striking down state laws as extraterritorial regulations simply do not apply."). In short, in light of *Pork Producers*, there is no question that the *Sam Francis* majority got it wrong, and the partial dissent got it right.

But even a full-throated reading of *Sam Francis* cannot save Frederici because it is readily distinguishable. First, Washington plainly has a legitimate interest in protecting Washington residents from conduct Washington deems harmful or undesirable. *See Edgar v. MITE Corp.*, 457 U.S. 624, 644 (1982) ("[P]rotecting local investors is plainly a legitimate state objective"); *Heckel*, 24 P.3d at 410 (discussing harms from "[d]eceptive spam" to "individual Internet users" protected against by CEMA). No such interest was served by the California statue in *Sam Francis*, which *regulated* California-resident sellers but *protected* artists' rights to royalties no matter where they resided. *See Sam Francis*, 784 F.3d at 1323 (faulting statute for purporting to apply "even if the [artwork], the artist, and the buyer never traveled to, or had any connection with, California"). Thus CEMA requires a much closer connection to Washington's legitimate regulatory interests than the statute in *Sam Francis* required to California's.

Second, Frederici's localization argument elides the meaningful difference between the intangible spam email at issue here and the sales of tangible goods at issue in *Sam Francis*. In the latter case, the transaction may be consummated in the instant goods are exchanged for payment. That consummation happens at a particular place and time. It may thus in principle be "a commercial transaction that 'takes place wholly outside of the State's borders.'" *Id.* at 1323 (quoting *Healy*, 491 U.S. at 336). Intangible commercial spam, by contrast—particularly in light of "the inherently interstate nature of e-mail communications," S. Rep. No. 108-102, at 21—may exist and have effects in several places at once, chief among them the home state of the recipient, no matter where she happens to be located at any particular time. For example, the deceptive spam

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE                    16

Frederici might send to a hypothetical, temporarily out-of-state Washington resident might arrive both on the phone she carries with her and on her desktop at home in Washington. Perhaps Frederici's hypothetical traveler forgets to check her email while traveling or forgets her phone at home, such that she does not actually view Frederici's deceptive spam until she's back in Washington. Perhaps she reads Frederici's deceptive spam while out-of-state but hurries home to make a purchase before its sale "ends." The point is that Washington's interest in protecting its residents from commercial spam, irrespective of where are those residents are at any given time, cannot be analogized to California's interest in regulating "a commercial transaction that 'takes place wholly outside of the State's borders.'" *Sam Francis*, 784 F.3d at 1323 (quoting *Healy*, 491 U.S. at 336).

Even within the terms of the "freestanding extraterritoriality principle," *Flynt*, 131 F.4th at 929, disavowed by *Pork Producers* but enforced by *Sam Francis*, Frederici has simply failed to explain why it should matter at all where a Washington resident happens to be located at the particular moment when Frederici presses "send" on a piece of deceptive spam addressed to her. *See Heckel*, 24 P.3d at 412 (rejecting extraterritoriality challenge to CEMA) (CEMA "does not burden interstate commerce by regulating when or where recipients may open the proscribed … messages."); *MaryCLE, LLC v. First Choice Internet, Inc.*, 890 A.2d 818, 842 (Md. Ct. Spec. App. 2006) (rejecting extraterritoriality challenge to CEMA-like statute) ("MCEMA does not regulate exclusively extraterritorial conduct because its focus is not on when or where recipients may open the proscribed ... messages." (internal quotation marks omitted)); *Ferguson v. Friendfinders, Inc.*, 115 Cal. Rptr. 2d 258, 266 (Ct. App. 2002) (rejecting extraterritoriality challenge to CEMA-like statute) ("[The statute] does not purport to regulate when or where [spam] recipients may read their e-mail"). What matters is Washington's interest in protecting Washington residents. *See*

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE

17

*Edgar*, 457 U.S. 624 at 644; *Heckel*, 24 P.3d at 412 ("[T]he Act addresses the conduct of spammers in targeting Washington consumers."); *MaryCLE*, 890 A.2d at 842–43 ("[T]he Act addresses the conduct of spammers in targeting Maryland consumers." (internal quotation marks, brackets omitted)).

The other cases cited by Frederici are even further afield from this one. Take *Daniel Sharpsmart, Inc. v. Smith*, 889 F.3d 608 (9th Cir. 2018). That case involved California's attempt to control the disposal of medical waste once it had left the state. *See Flynt*, 131 F.4th at 931. Again, it is not possible to localize deceptive spam in the same way as medical waste disposal, undermining any rationale for applying a supposed prohibition on regulating "transactions that occur wholly outside of the State." *Id.* (quoting *Daniels Sharpsmart*, 889 F.3d at 615). And, again, no such "freestanding" prohibition is to be negatively implied from the Commerce Clause in the first place. *Id.* at 924 (citing *Pork Producers*, 598 U.S. at 373); *see also id.* at 931 ("Although we appreciate … that *Daniel Sharpsmart* is in tension with *Pork Producers*, that is not an issue we must resolve today."). Likewise distinguishable is *Hartman v. United Bank Card, Inc.*, 291 F.R.D. 591 (W.D. Wash. 2013). That case involved application of the constitutional-doubt canon of statutory interpretation rather than direct application of the Constitution itself. *Cf. United States v. UCB, Inc.*, 970 F.3d 835, 848 (7th Cir. 2020) (noting dangers of the "hazy penumbra of quasi-constitutional law" produced by the canon). And *Hartman*'s constitutional-doubt construction applied the same, broad, decontextualized *Healy* dicta condemned by *Pork Producers*. *See Hartman*, 291 F.R.D. at 598. Finally, the *Hartman* plaintiffs' proposed statutory construction had nothing to do with *residence* at all, but merely possession of "phone numbers with area codes traditionally assigned to Washington State." *Id.* Frederici makes no argument that a state's interest in protecting its residents is at all analogous to any supposed interest in protecting people with area

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS                    18
No. 3:25-cv-06108-DGE

codes assigned to the state. *Booth v. Appstack, Inc.*, 2015 WL 1466247, at *14 (Mar. 30, 2015), simply restates *Hartman*'s holding as to the same statute. *PSINet, Inc. v. Chapman*, 362 F.3d 227, 239–40 (4th Cir. 2004), likewise involved a challenge to a statute that had nothing to do with residence. Moreover, the Fourth Circuit's analysis fails to persuade, especially in light of *Pork Producers*, as it appears to vacillate between *Healy*-type extraterritoriality language and *Pike* balancing (discussed further below), without grounding its constitutional holding firmly on one or the other. Similar problems undermine Frederici's reliance on *American Libraries Ass'n v. Pataki*, 969 F. Supp. 160, 168–83 (S.D.N.Y. 1997). Finally, like the *Sam Francis* majority, *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997, 1021–25 (E.D. Cal. 2017), denies what *Pork Producers* affirms: that *Healy* and cases like it prohibit discrimination and protectionism, not "extraterritoriality" in the abstract. *See id.* at 1023 (rejecting defendant's correct argument that *Healy* applies only to protectionist statutes).

Three stray arguments remain. First, Frederici suggests that CEMA's constructive knowledge provision may reach nonresidents. *See* Mot. 15. But the demonstrative adjective its quotation from the provision omits clearly defeats its argument: "[A] person knows that the intended recipient … is a Washington resident if *that* information"—*i.e.*, information that the recipient is a Washington resident—"is available, upon request, from the registrant of the internet domain name contained in the recipient's electronic mail address." Rev. Code Wash. § 19.190.020 (emphasis added). Second, Frederici faults Plaintiff's failure to plead that she was within Washington's borders when she received any of the challenged emails. That gets the pleading burdens backwards. It is not Plaintiff's burden to anticipate, refute, or "plead around" Frederici's affirmative defense. *U.S. Commodity Futures Trading Comm'n v. Monex Cred. Co.*, 931 F.3d 966, 972 (9th Cir. 2018). Having elected to raise its Commerce Clause preemption defense under

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE

19

Rule 12(b)(6), it is *Frederici's* burden to show that it is "apparent from the face" of Plaintiff's complaint that it is entitled to dismissal. *Sams*, 713 F.3d at 1179. Third, Frederici argues that the Washington Supreme Court has "tacitly acknowledged" CEMA would be preempted by the Commerce Clause as applied to emails fortuitously received outside Washington by Washington residents. Mot. 17 (capitalization regularized). The court has done no such thing. *See Heckel*, 24 P.3d at 412 (rejecting extraterritoriality challenge to CEMA) (CEMA "does not burden interstate commerce by regulating when or where recipients may open the proscribed … messages.").

In short, by protecting Washington residents from deceptive commercial email no matter where they happen to be located when the email is sent, CEMA runs afoul of no constitutional command. Frederici's extraterritoriality arguments fail.

**B.      CEMA does not unduly burden interstate commerce.**

That leaves Frederici's undue burden arguments, or so-called "*Pike* balancing." *Flynt*, 131 F.4th at 925 (citing *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970)); *see* Mot. 19–20. These fare no better than the last. Under *Pike*, challengers must first show that the challenged law "imposes a substantial or significant burden on interstate commerce," and then that this burden is "clearly excessive in relation to the putative local benefits." *Flynt*, 131 F.4th at 925; *see also id.* at 931 (same). As *Pork Producers* makes clear, the point of *Pike* balancing is to ferret out any "discriminatory purpose[s]" behind the "practical effects" of "facially neutral" laws. *Pork Producers*, 598 U.S. at 377–78. Like the *Pork Producers* plaintiffs, Frederici here "nowhere suggest[s] that an examination of [CEMA's] practical effects in operation would disclose purposeful discrimination against out-of-state businesses." *Id.* at 379. Beginning so far "outside *Pike*'s heartland" is "not an auspicious start." *Id.* at 380.

Inauspicious indeed: Frederici's argument misstates step one of the *Pike* inquiry and pays

bare lip service to step two. As for step one, the question is *not* "whether the state law attempts interstate regulation of a subject of national concern," Mot. 19; the question is whether the law "imposes a substantial or significant burden on interstate commerce." *Flynt*, 131 F.4th at 925. It is not surprising Frederici would prefer a different standard than the Supreme Court's: burdens on interstate commerce are "substantial" or "significant" under *Pike* "only in rare cases." *Pork Producers*, 6 F.4th at 1032. Mere "compliance costs, without more," do not qualify. *Id.*; *see also Flynt*, 131 F.4th at 932 (noting both *Pork Producers* decisions rejected *Pike* challenges to a statute imposing "millions (if not billions)" in national compliance costs). Here, CEMA compliance can impose no more than a fraction of the compliance costs in *Pork Producers* and poses absolutely no threat to "the free flow of commerce from state to state." *Flynt*, 131 F.4th at 932–33 (quoting *Pork Producers*, 6 F.4th at 1033). To the contrary, CEMA's "requirement of truthfulness … does not burden commerce at all but actually facilitates it by eliminating fraud and deception." *Heckel*, 24 P.3d at 411 (internal quotation marks omitted) (rejecting *Pike* challenge to CEMA).

Frederici's invented standard appears to draw from a line of cases holding that "inconsistent regulation of activities that are inherently national or require a uniform system of regulation" may impose burdens cognizable under *Pike*. *Flynt*, 131 F.4th at 932 (quoting *Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 952 (9th Cir. 2013)). But these cases are limited to "the categories of 'transportation' or 'professional sports leagues.'" *Eleveurs*, 729 F.3d at 952 (quoting *Valley Bank of Nev. v. Plus Sys., Inc.*, 914 F.2d 1186, 1192 (9th Cir. 1990)) (brackets omitted). And in the absence of any state law requiring falsity or deception in the subject lines of commercial email, there can be no threat of inconsistency with CEMA's "requirement of truthfulness." *Heckel*, 24 P.3d at 411. In any event, as explained above, Congress has expressly approved state regulation of false or deceptive commercial email, even in light of its "inherently

interstate nature," S. Rep. No. 108-102, at 21, by excepting rules that prohibit "falsity or deception," 15 U.S.C. § 7707(b), from CAN-SPAM preemption. "Congress, in other words, chose to abandon any search for uniformity in dealing with the problems" of false or deceptive commercial email "and decided to suffer a medley of attitudes and philosophies on the subject." *Retail Clerks Int'l Ass'n, Local 1625 v. Schermerhorn*, 375 U.S. 96, 104–05 (1963) (discussing preemption exception in 29 U.S.C. § 164(b)).

Frederici ignores all this. Instead, it attempts to shoehorn this case into *NCAA v. Miller*, 10 F.3d 633 (9th Cir. 1993). But *Miller* is clear that it does not engage in *Pike* balancing at all. *See id.* at 640. The statute struck down in *Miller* facially discriminated against interstate commerce and so was struck down without more. *See id.* at 638 ("[T]he Statute is directed at interstate commerce and only interstate commerce."), 640 (facial discrimination "per se" preempted by the Commerce Clause). *Id.* at 640. In this case, of course, there is no such facial discrimination. *Miller* pointed further to the threat of inconsistent obligations faced by plaintiff. *See id.* at 639–40. As noted above, however, Frederici does not argue another state's laws require it to send false or misleading commercial emails, so it faces no such threat from CEMA. In short, *Miller* has no application here. CEMA imposes no "significant" or "substantial" burden on interstate commerce. *Flynt*, 131 F.4th at 932.

As for step two of *Pike* balancing, Frederici makes no serious effort to ascertain the local benefits promoted by CEMA or to balance them against the (nonexistent) burdens on interstate commerce imposed by CEMA. It's just *Healy* all the way down. *See* Mot. 20 (citing, yet again, *Healy*). But the Washington Supreme Court has articulated CEMA's "local benefits" in detail:

> The Act protects the interests of three groups—ISPs, actual owners of forged domain names, and e-mail users. … To handle the increased e-mail traffic attributable to deceptive spam, ISPs must invest in more computer equipment. … Along with ISPs, the owners of impermissibly used domain names and e-mail addresses suffer

> economic harm. … Deceptive spam harms individual Internet users as well. … [T]he use of false or misleading subject lines further hampers an individual's ability to use computer time most efficiently. When spammers use subject lines such as 'Hi There!,' 'Information Request,' and 'Your Business Records,' it becomes virtually impossible to distinguish spam from legitimate personal or business messages. … [A]ll Internet users (along with their ISPs) bear the cost of deceptive spam.

*Heckel*, 24 P.3d at 410 (internal quotation marks, footnote call numbers omitted); *cf. Flynt*, 131 F.4th at 925 ("[U]nless the benefits of the state's law are 'illusory,' courts typically accept the state's articulation of the law's claimed benefits.").

Against this, Frederici's only argument is that Washington "could draft a more narrowed [*sic*] statute" that protects anyone who fortuitously happens to be inside Washington's borders when Frederici presses send on its deceptive commercial emails, rather than Washington residents. Mot. 20. That is deeply counterintuitive (why would a state have a greater interest in protecting nonresident visitors than its own residents?) and in any case irrelevant: *Pike* does not require states to craft the narrowest possible statutes and regulatory regimes; it simply prohibits unduly burdening interstate commerce as a cover for economic protectionism. Frederici makes no genuine argument that CEMA does so. Its *Pike* challenge fails.

**IV.    Plaintiff's CPA claims survive.**

Frederici's only argument for dismissal of Plaintiff's CPA claims is that they stand or fall with Plaintiff's CEMA claims. *See* Mot. 20–21. As Plaintiff's CEMA claims survive for the reasons given above, so too do her CPA claims.

**V.    Plaintiff's demands for relief survive.**

Finally, Frederici argues the Court should dismiss Plaintiff's demands for actual and treble damages. *See* Mot. 21–22. But Rule 12 authorizes dismissal of *claims*, not forms of relief. *See* Fed. R. Civ. P. 12(b)(6); *Correa v. Fryhoff*, 2025 WL 819037, at *2 (C.D. Cal. Feb. 20, 2025) (citing among six other cases *Bontkowski v. Smith*, 305 F.3d 757, 762 (7th Cir. 2002) ("[T]he demand is

not itself a part of the plaintiff's claim")). Accordingly, "when a plaintiff states a claim, the appropriate form of relief is not to be decided upon a motion to dismiss." *Daniel v. Lennar Corp.*, 2019 WL 8194735, at *5 (C.D. Cal. Oct. 16, 2019) (brackets omitted). Because Plaintiff states both CEMA and CPA claims, as explained above, Frederici's attack on the relief appropriate to such claims is premature. *Kempf*, 2026 WL 395677, at *7 n.11 (finding damages analysis was premature before liability established). Neither of its cited cases cited by Defendant, *see* Mot. 21, both of which involved failures to state *claims*, counsel a different result. *See Grizzly Gen. Contractors Corp. v. Kitsap Pub. Health Dist.*, 2025 WL 81384, at *7 (W.D. Wash. Jan. 13, 2025) (dismissal granted where plaintiff failed to plausibly allege any element of CPA claim); *Paris v. Steinberg & Steinberg*, 828 F. Supp. 2d 1212, 1217 (W.D. Wash. 2011) (dismissal granted where plaintiff failed to plausibly allege injury element of CPA claim).

## CONCLUSION

The Court should deny Frederici's motion to dismiss.

*[Counsel signatures to follow on next page.]*

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE

24

Date:   February 20, 2026

Respectfully submitted,

 /s/ Samuel J. Strauss
Samuel J. Strauss, WSBA No. #46971
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Telephone: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

*I certify that this memorandum contains 7,652 words in compliance with the Local Civil Rules.*

Lynn A. Toops*
Natalie A. Lyons*
Ian R. Bensberg*
**COHENMALAD, LLP**
One Indiana Square, Suite 1400
Indianapolis, IN 46204
Tel.: (317) 636-6481
ltoops@cohenmalad.com
nlyons@cohenmalad.com
ibensberg@cohenmalad.com

Gerard J. Stranch, IV*
Michael C. Tackeff (*pro hac vice*)
Andrew K. Murray*
**STRANCH, JENNINGS & GARVEY, PLLC**
223 Rosa L. Parks Avenue, Suite 200
Nashville, TN 37203
Tel.: (615) 254-8801
gstranch@stranchlaw.com
mtackeff@stranchlaw.com
amurray@stranchlaw.com

*Attorneys for Plaintiffs*

**\* Applications for admission *pro hac vice* forthcoming**

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE

25

**CERTIFICATE OF SERVICE**

I, Samuel J. Strauss, hereby certify that on February 20, 2026, I caused the foregoing to be electronically filed with the Court using the Court's CM/ECF system which will send an electronic copy to all parties and/or their counsel of record.

DATED this 20th day of February, 2026.

/s/ Samuel J. Strauss
Samuel J. Strauss, WSBA No. #46971
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, IL 60611
Tel.: (872) 263-1100
Facsimile: (872) 263-1109
sam@straussborrelli.com

PLAINTIFF'S OPPOSITION TO
MOTION TO DISMISS
No. 3:25-cv-06108-DGE

26